UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  DAVID A. BECHTOLD and         :
MELISSA JO JOHNSON,          :         Case No. 06-20586REF
Debtors          :         Chapter 13


### MEMORANDUM OPINION (1) DENYING COUNSEL'S MOTION FOR RECONSIDERATION, (2) APPROVING, WITH A REDUCTION OF FEES, COUNSEL'S APPLICATION FOR COMPENSATION, AND (3) SANCTIONING COUNSEL BY FURTHER REDUCING THE FEES AWARDED TO HIM


## I.  BACKGROUND


On February 23, 2007, I issued a written Order approving a request for attorneys' fees for Debtors' counsel, Eric L. Leinbach, Esquire ("Mr. Leinbach") (the "February 23 2007 Order"), but reducing the fees because counsel overstated the time incurred in at least one task completed for his clients in this case.  The February 23 2007 Order reduced the compensation requested by Debtors' counsel because he sought payment for three hours of time for attending a meeting, but failed to pro-rate his time properly among all of his clients for whom he had appeared at meetings and at hearings that were held that day.  I reduced the compensation sought both by the overcharged amount of the fee for attending the meeting and by the balance of the charge for the meeting, which further reduction constitutes a sanction.  The sanction is warranted because this sort of overcharge was not the first of its nature that I had seen in Mr.

1

Leinbach's fee applications.

On March 23, 2007, Mr. Leinbach filed a Motion To Reconsider Order on

the First Application for Compensation of Attorney's Fees Entered on February 23, 2007

(the "Reconsideration Motion"), and I held a hearing on his Reconsideration Motion on

April 26, 2007.  As he has done in the past,[1] Mr. Leinbach came to the hearing without

records that he claimed supported his compensation request.  Once again, I granted him

leave to supplement the record through a subsequent filing.[2]  Because the Reconsideration

Motion was not timely filed, because the fee, as reduced, is appropriate for this case, and

because Mr. Leinbach failed to show that the basis and rationale of the February 23 2007

Order were not correct, I will deny the Reconsideration Motion.  The discussion below

constitutes my findings of fact and my conclusions of law.


## II.  PROCEDURAL BACKGROUND


Debtors, through their counsel Mr. Leinbach, filed this Chapter 13

bankruptcy case on May 1, 2006.  Two weeks after the initial filing, Mr. Leinbach filed

his Rule 2016 Disclosure of Compensation by Attorney, disclosing that he had charged

Debtors $3,500 as his fee in this case and that he had received a retainer/deposit of

---

[1] See, e.g., In re Wise, No. 02-20931 slip op. at 17 (Bankr. E.D. Pa., April 3, 2007).

[2] On May 3, 2007, Mr. Leinbach filed, as Document #41 in this case, a 2-page letter with five pages of attachments to supplement the record (the "Supplement").

2

$1,500.

On January 2, 2007, Mr. Leinbach filed his First[3] Application for

Compensation (the "Application"), requesting approval of $2,395 of fees, requesting

reimbursement of expenses of $484, and noting that he had already been paid $1,500.  As

with all debtors in bankruptcy, Debtors were required to attend a Section 341 first

meeting of creditors[4] on July 11, 2006, and were represented there by Glenn T. Roth,

Esquire ("Mr. Roth"), an attorney affiliated with Mr. Leinbach.  My reduction of the fees

resulted from Mr. Leinbach's charge of 3.0 hours for Mr. Roth's attendance at the Section

341 creditors' meeting, despite his attending another creditors' meeting on behalf of

another client that same afternoon.  Upon my review of the records in this case, I entered

the February 23 2007 Order, reducing the awarded fees.  My reduction of fees led to the

Reconsideration Motion, which I resolve with this Memorandum Opinion.

---

[3]Because this case was dismissed shortly thereafter (on February 15, 2007), no second
application for compensation can be filed or considered.

[4]Section 341 of the Bankruptcy Code requires that the Trustee, in each case, schedule and
conduct a meeting of creditors within a reasonable time after the bankruptcy case is initiated.  11
U.S.C. §341(a).

## III.  REVIEWS OF FEE APPLICATIONS GENERALLY AND OF MR. LEINBACH'S IN PARTICULAR[5]

### A.  Review of Fee Applications Generally

I was appointed to sit in the Reading Division of the Eastern District of Pennsylvania in February 2006.  Although I had been involved to some extent with consumer debtors' counsel fees, I did not have substantial experience.  Over my first six months or so as a judge, I reviewed dozens, certainly more than a hundred, consumer debtors' fee applications for counsel.  In the course of that review I became familiar with the "going rate" charged by consumer debtors' attorneys and the amount and range of fees that might be charged in Chapter 13 attorney compensation cases.[6]  As part of my ongoing responsibility to review fees, even if uncontested,[7] I would review counsels' lists of their time entries for various tasks they had performed for their debtor-clients.  Within the first few months of sitting as a Bankruptcy Judge, I set hearings on otherwise

---

[5]This Section III of this Memorandum Opinion is very similar to sections with the same heading name in In re Wise, No. 02-20931, slip op. at 5 (April 3, 2007); and In re Heffner, No. 05-26495, slip op. at 4 (April 19, 2007), two recent decisions also reducing Mr. Leinbach's requests for attorneys' fees.

[6]Since 2004, when the United States Supreme Court dispensed with the award of attorneys' fees from Chapter 7 debtors' estates to their counsel in Lamie v. United States Trustee, 540 U.S. 526, 1245 S. Ct. 1023 (2004), this Court does not review or approve Chapter 7 debtors' attorneys' fee applications for payment by the estate.

[7]See In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 840-45 (3d Cir. 1994).  See also the discussion of Busy Beaver below in Section V, for the duty of Bankruptcy Courts to review attorneys' compensation applications sua sponte, even if no other party to a proceeding objects to or contests the application.

4

uncontested fee applications for most of the attorneys who regularly practice bankruptcy

before me.  I saw that a large proportion of the fee applications were under the "no look"

threshold of $2,000.[8]   A very large percentage of fee applications were under $3,500.

But some of the fee requests exceeded $3,500.  Initially, I set hearings sua sponte for fee

applications that appeared unusual or that were in excess of $3,500,[9] and I asked counsel

to explain what they had done for the relatively higher fees in their applications.  When

Mr. Leinbach testified in the Summer of 2006 about fee applications for which I had set

hearings, I was surprised to hear that he had no contemporaneous time-keeping system,

either manual with a time-sheet and a pencil or through computerized software.  I will

more fully discuss Mr. Leinbach's "after-the-fact" creation of time records later in this

Opinion.[10]

In the course of my examination of numerous fee applications, I noticed that

some fees stood out as aberrations, being higher on average than others for similarly

complex cases.  When I refer to noticing aberrations on average, I do not mean to imply

---

[8]Local Bankruptcy Rule 2016-2(a) permits counsel to dispense with specific, individual time entries and to file for a lump-sum fee if the total compensation for counsel in the case will be $2,000 or less.  This is referred to colloquially as a "no look" fee.

[9]I tried to avoid loss of productive time for counsel by scheduling these hearings on dates on which counsel would be in court for some other matter.  I continue to do this.  For example, on March 29, 2007, I approved the continuance of a hearing for another of Mr. Leinbach's fee applications because he had nothing else on my calendar the day it would have been heard.  In re Waltenberg, No. 05-25084.

[10]I will also address below, Mr. Leinbach's testimony at the April 26, 2007 hearing that he has time records for (at least) associate attorneys in his office.  This came as a complete surprise to me, because of his prior statements that he did not have time records.

any precise, methodical, or organized review or calculation.  I mean simply that as I

reviewed the many fee applications, a framework of sorts developed in my mind and I

saw that some counsels' fees were consistently higher than most others (I also saw that

some requests for fees were consistently lower).  I also noticed several time entries of

several hours for specific tasks performed, particularly for attending hearings and for

attending Section 341 creditors' meetings.[11]  I also noticed that Mr. Leinbach was and is

the only attorney seeking approval of fees that were charged in 1/8-hour increments of

time.  Most other law firms charge time in 1/10-hour increments.  I have not heretofore

regarded this as an issue because some attorneys who bill in 1/10-hour increments rarely

list an event whose time is 0.1 hours.  I have not yet determined that billing in minimal

increments of 1/8-hour is per se unreasonable.

My previous tacit approval of 1/8-hour billing has come into substantial

question, however, because I was amazed to discover in Mr. Leinbach's Supplement that

at least his associate attorneys (Mr. Roth in this case), and perhaps others in his staff,

record their time in 1/10-hour increments.  Although Mr. Roth recorded his time for Mr.

Leinbach in 1/10-hour increments, Mr. Leinbach billed his clients in 1/8-hour increments.

B.  Review of Mr. Leinbach's Fee Applications

In my first half-year review, a disproportionate number of the fee

applications that appeared to be higher than the norm, taking into account the complexity

---

[11]See footnote 4, above.

and number of tasks performed, were Mr. Leinbach's.  Many of the fee applications in
which abnormally high numbers of hours were charged for hearings or creditors'
meetings were also Mr. Leinbach's.  I do not state these general references as substantive
support for any of the discussion below about what Mr. Leinbach did and did not do in his
fee application in this matter.  I provide this reference solely to establish how and why I
started to scrutinize Mr. Leinbach's fee applications more particularly in Fall 2006.

I have noted before[12] and I again note at this point that Mr. Leinbach is a
highly effective and tenacious advocate for his clients' interests in Bankruptcy Court.  He
is a bright and aggressive attorney who knows many procedural and substantive methods
to establish, protect, and enhance his clients' rights and remedies.  Despite his tenacity
and ability, I have had no attorney who has been the subject of as many complaints by his
existing and former clients relating to his refusal to represent them, generally when they
could not pay him some additional retainer or agree to some increase in his fee.
Unfortunately, difficulties between clients and counsel occur, but Mr. Leinbach is the
only attorney practicing before me who has had more than one such complaint voiced
against him.  A number of his clients have complained on numerous occasions.[13]  These

---

[12]See In re Wise, No. 02-20931, slip op. at 8 (Bankr. E.D. Pa., April 3, 2007); and In re Heffner, No. 05-26495, slip op. at 6-7 (Bankr. E.E. Pa., April 19, 2007).

[13]See, e.g., In re Papp, No. 06-20973 (Mr. Leinbach's entire initial retainer was ordered disgorged by my Order of October 26, 2006, granting the motion for disgorgement pressed by the United States Trustee).  If Mr. Leinbach develops difficulties with his clients, or if fee disputes arise that cause him, in his professional judgment, to withdraw as counsel, he may do so and he has done so.  See In re Muzzicato, No. 03-24512 (Mr. Leinbach was ordered to continue his representation of his client until his request to withdraw was granted, which request was

7

complaints from Mr. Leinbach's clients are not presented to support this decision; rather, they are offered in support of my belief that Mr. Leinbach's approach to his fees and compensation, which I had seen in the Summer and Fall of 2006, warranted my closer attention and scrutiny.

## C.  Initial Review and Reduction of Overcharges in Mr. Leinbach's Fee Applications

When I started to review Mr. Leinbach's applications more closely in the Fall of 2006, I noted what appeared to be instances in which Mr. Leinbach was charging one debtor/client the full amount of time for traveling to and attending a hearing or creditors' meeting, when he (or some other attorney in his firm) had actually represented two or three or more other clients at hearings or meetings on the same date in the same courtroom or meeting room.  Despite his representation of multiple clients at these hearings and meetings, Mr. Leinbach did not pro-rate the time among the clients in his fee applications.[14]  In other words, it appeared that Mr. Leinbach was double billing, triple billing, and more for attending hearings and creditors' meetings for multiple clients.  This

---

ultimately granted).  But as long as he represents his clients and does not withdraw as counsel, Mr. Leinbach's professional duty is to represent them and their interests in court proceedings that arise. Unfortunately, I have had more than one client of Mr. Leinbach appear in Court without him, telling me that Mr. Leinbach wanted an additional fee, but the client could not afford it.

[14]To investigate his over-charging, I would (a) note that Mr. Leinbach (or another attorney in his office) had charged a certain amount of time for a hearing or meeting, (b) look at records of other hearings or meetings that day, (c) review other relevant court records, and (d) note the number of his clients that Mr. Leinbach (or another attorney) had represented that day.

is precisely the type of over-billing that occurred in this case, and I will analyze this method of overcharging in more detail below.

Not wishing to embarrass Mr. Leinbach by addressing this discovery in public, in November 2006, I had an off-the-record sidebar conference with him and counsel for the Chapter 13 Trustee, during a hearing on other cases, in which I told him that I had seen this overcharging in some of his bills and I would simply deduct some of his requested fees in orders otherwise approving his fees.  Mr. Leinbach was apologetic and promised to examine other fee applications more carefully to ensure that this would not happen again.[15]

## D.  Reductions of Mr. Leinbach's Fee Applications

On November 16, 2006, I held hearings in two cases solely to review Mr. Leinbach's fee applications.[16]  Because it appeared to me generally that the fees charged were excessive for the work undertaken and the results achieved, I reduced both of the fee requests.[17]  As with my previous, generalized review of Mr. Leinbach's fee applications that I undertook in my first six months on the bench, I do not relate these cases to establish that Mr. Leinbach has overcharged in the case at bar.  I refer to them for two

---

[15]Following this side-bar, I reduced the fees in In re Kaminski, No. 01-25537 (order dated November 14, 2006) and In re Ross, No. 03-23788 (order dated November 27, 2006) among other cases.

[16]In re Sherer, No. 03-21188; and In re Williams, No. 04-20617.

[17]Williams (order dated December 18, 2006); Sherer (order dated January 10, 2007).

reasons:  First, to show my steps in dealing progressively with his overcharging; and

second, to support the imposition of sanctions against Mr. Leinbach, discussed in more

detail below.


E.  Review and Reduction of Mr. Leinbach's Fee Applications in 2007

          In early 2007, I noticed two cases that were similar and in which Mr.

Leinbach was counsel for debtors.  Both cases had been dismissed, and Mr. Leinbach

pursued his fee requests.  Both cases were similar in the negative results obtained for his

clients, but one case, In re Faust, No. 06-20794, took six months with very few

adversarial events occurring through that time, while the other case, In re Wasilewski,

No. 05-29021, took over a year to administer, including many disputes with creditors and

other parties in interest along the way.  The shorter, less conflict-laden Faust case had

roughly the same time charged and had a somewhat higher request for compensation.

Having noticed this oddity, I examined both cases and held a hearing on February 1,

2007, for a review of Mr. Leinbach's fee applications in both cases.  Through the course

of the hearing, I learned that Mr. Leinbach (or an attorney in his office) had failed to pro-

rate the time attributed to creditors' meetings among all of his clients for whom he had

performed the work.  In the Faust case, Mr. Leinbach's office charged to the debtors all of

the time (5.0 hours) for traveling to and attending a number of creditors' meetings in

which an attorney from his office represented several of their clients that day.   The time

and fee were not prorated among all of his clients represented at these meetings.  I

10

approved his requested fee in <u>Faust</u>, but I reduced it from $3,875 to $3,200.[18]  The same

basic overcharge occurred in the <u>Wasilewski</u> case.  Again, I approved his requested fee,

but I reduced it from $3,520 to $3,020.[19]

   Mr. Leinbach also testified in the hearings on February 1, 2007, that he had

acquired and had started to use a computerized time-keeping system in the Fall of 2006,

but that, in the <u>Faust</u> and <u>Wasilewski</u> cases, the time records had been compiled by going

back through the files to try to resurrect some idea of what was done on behalf of the

client and how long it took.  Non-contemporaneous, after-the-fact re-creation of time

entries is clearly a deficient and inappropriate method of time-keeping.  The much more

appropriate contemporaneous time keeping that Mr. Leinbach now uses will, hopefully,

eliminate problems with his fee applications.[20]

   In the February 1, 2007 hearing, Mr. Leinbach and a paralegal from his

office testified that his staff would go through a file when he decided to bill it (generally

---

[18]<u>In re Faust</u>, No. 06-20794 (order dated February 1, 2007) (although I had a sense that the overall fee, even as reduced, remained too high for the work performed, I mistakenly did not reduce his fee below $3,200).

[19]<u>In re Wasilewski</u>, No. 05-29021 (order dated February 1, 2007) (unlike in <u>Faust</u>, my sense was that Mr. Leinbach's fees, after the reduction, were supported by the work undertaken in this case).

[20]As noted at page 6, above, and footnote 25, below, however, I have now learned that at least Mr. Leinbach's associate attorney Mr. Roth had some sort of time records that might have avoided the double and triple billing overcharges.  In fact, Mr. Leinbach refers to these time records as contemporaneous recordation of time.  But the recorded time reflects only what Mr. Roth did, it does not show in any way for whom the work was done.   I will investigate this newly disclosed existence of these time records further in another context.

long after the work was actually performed), would look for any notations of time on

documents that were in the file, would estimate the time if no notation existed, and would

transpose the time entries into some word processing document that was not produced in

evidence for me.  Apparently, his staff would also look for hearings and meetings within

a case's electronic, on-line docket and guesstimate the amount of time spent in attending

any such hearing or meeting.  Mr. Leinbach's staff often appears to charge an identical,

fixed amount of time for particular tasks regardless how much (or little) time was actually

incurred to accomplish the task.  But that was the only way his office could create time

records when none existed because they have no idea how much time was actually

incurred.[21]


## IV.  MR. LEINBACH'S FEE APPLICATION IN THIS CASE


At the time that Mr. Leinbach's Application in this case came to my

attention, I had noted all of the preceding overcharges (and more) by Mr. Leinbach in the

cases cited above and in his other fee applications.  I reviewed the Application, granted

---

[21]My description of the efforts undertaken long after the fact by Mr. Leinbach's staff to
create some record of time spent in a matter when no such record exists is similar to all of my
other conclusions and analyses of information I have received about his efforts to create time
entries in his fee applications.  That is, I did not and do not now use for this case my assumptions
about his system and directions to his staff in other cases, other than to note that, in case after
case, it simply did not and does not work.  None of these assumptions, however, was used to
determine whether the charges in the Application in this case were legitimate or otherwise.  My
experiences with Mr. Leinbach's fee applications in these other cases does, however, support my
imposition of sanctions against him, as discussed in more detail below.

his request for compensation, and reduced the amount awarded.  He has moved for

reconsideration of my reduction of his fees

A.  Reduction of Mr. Leinbach's Fees for Overcharging for Attending a Creditors'
Meeting on Behalf of Debtors When He Was Also Attending a Creditors' Meeting for
Another Client in the Same Afternoon

Upon my review of the Application, I noticed what appeared to me to be an

excessive charge for attending Debtors' creditors' meeting.  Mr. Roth, the attorney

working for Mr. Leinbach, had charged 3.0 hours of time for attending the creditors'

meeting on July 11, 2006.  His 3.0 hour time entry for the meeting was an overcharge

because he attended a meeting on behalf of another client at that same time.

In footnote 1 of my February 23 2007 Order, I explained in detail why I

believed then, and find as a fact now, that Mr. Leinbach overcharged the estate for Mr.

Roth's attendance at the July 11, 2006 meeting.  Footnote 1 of my February 23 2007

Order states:

In counsel's Application, he includes a time entry for Glenn Roth, Esquire,
an associate in counsel's office, on July 11, 2006, that reads: "Preparation for
Hearing, Travel to and from Hearings, Appearance at Hearing, Conversation with
Client."  In fact, although I had a list of numerous cases that day, no person from
counsel's office appeared at any of them  – Debtors in this case had no hearing
before me that day.  Further research on my part, however, revealed that Debtors'
first meeting of creditors pursuant to Section 341 was that day at 3:00 p.m., and
that Mr. Roth attended the creditors' meeting to represent Debtors.  Also, that day,
however, immediately preceding Debtors' meeting, Mr. Roth appeared for two
other Debtors in their creditors' meeting.  See In re Fogel, No. 06-20547.  Counsel
attributes and charges for three (3) hours for the "hearing" in his time records,
which amount of time I reject.  In an abundance of caution, counsel could have left
their Lehigh Valley office at 1:30 (or at 1:00 at the earliest) to attend the 3:00

> Section 341 meetings in Reading, both meetings were scheduled back to back,
> taking maybe 15-20 minutes together, and the return trip would be less than an
> hour and a half, for a total of three and a half hours or so.  Counsel seeks to charge
> Debtors for three (3) hours of time, which I hereby reject.

In re Bechtold, No. 06-20586 (Order dated February 23, 2007).

Mr. Roth clearly attended the creditors' meeting on behalf of Debtors in this case.  But for Mr. Leinbach's staff to create a record that charges three hours to this case for that meeting when Mr. Roth appeared that same afternoon at the same scheduled time for another client is not acceptable.  Mr. Leinbach claims in the Supplement that the July 11, 2006 time entry for attending the meeting included Mr. Roth's preparation and conferences with his clients.  Mr. Leinbach points to internal time records created by Mr. Roth,[22] which include a time entry, not on July 11, 2006, but on the preceding day, as showing that Mr. Roth spoke with Debtors in this case (the time entry is devoid of any reference to whom Mr. Roth spoke.  He also claims that part of the time entry for drafting memos to file on July 12 constitutes part of the July 11 charge.

This raises at least four significant problems with Mr. Leinbach's Application and evidence supporting it.  First, Mr. Leinbach suggests that his office intentionally misstated the dates of the entries in the Certification for Services Rendered

---

[22]Mr. Roth's time records were not intended to provide a basis for billing clients, but were intended to provide the basis by which Mr. Leinbach would compensate Mr. Roth.  The difference between these records and actual time records that support a fee application follows: The Roth/Leinbach time records say only what Mr. Roth did and how long he took to do it; appropriate time records cover both of those components, but state for whom the work was done. Mr. Roth's records are silent in every respect about the clients for whom he performed all of his tasks.

(attached to his Application) by deliberately combining into a single time charge, portions

of various time entries from numerous days.[23]  Second, when Mr. Leinbach suggests that

Mr. Roth spoke with Debtors, he has no knowledge whatsoever whether Mr. Roth did so.

Mr. Leinbach assumes certain facts about what Mr. Roth did, may have done, or did not

do, with no notes from Mr. Roth and without having Mr. Roth explain definitively what

actually happened.[24]  Third, the recorded time entries[25] on which Mr. Leinbach relies as

establishing that Mr. Roth spoke with Debtors, do not say so; they simply refer to his calls

to clients.  Nothing in the records indicates that Mr. Roth spoke with the Debtors in this

---

[23]In the Supplement, Mr. Leinbach admits that his staff cut-and-pasted portions of three separate time entries from three different days to prepare the single time entry at issue in this matter.  They combined 1.3 hours from July 10, 2006 ("Review files, call clients, and copy required docs"), 10.2 hours from July 11, 2006 ("Attend hearings in reading [sic].  341 at Reigl's [sic] office"), and 0.4 hours from July 12, 2006 ("Draft memos") to get 11.9 hours and then divided by four (an incorrect denominator - it should be five rather than four - see the discussion below at pp. 16-17) to get 2.975 hours for each of the four clients.  None of the time entries submitted by Mr. Leinbach identified for whom the work was done.

[24]I understand fully that Mr. Roth is no longer associated with Mr. Leinbach's office and that this might create a burden in having Mr. Roth testify or provide an addendum to the Supplement, but Mr. Leinbach cannot expect, and I will not accept, that his assumptions and suppositions will serve in lieu of appropriate evidence.

[25]I note here that in the past when I had asked Mr. Leinbach to produce daily time records for charges included in his fee applications, he testified that he had none.  I do not want to mince words in a syntactical debate, but obviously, Mr. Leinbach seems to have some time records for (at least) his associate attorneys.  It may well be that Mr. Leinbach's past references to having no time records referred solely to himself, because I have not gone back over the transcripts of prior hearings, but I was surprised at the April 26, 2007 hearing to learn that some time records exist.  In any event, I note this surprise without it affecting my determination in this matter in any way.  On the other hand, the purported time record included with the Supplement is awfully sketchy in that it appears to be about one-third of a page on which some apparent time entries have been typed by someone (not identified) and hand-written notes have been made by someone (not identified).  See Supplement, at p. 3 (Document #41, filed May 3, 2007).

case.  Fourth, Mr. Leinbach faces the same problem that has plagued him in all of my

reviews of his fee applications  – he is reconstructing all time records.  He has no clear,

unambiguous, contemporaneous time records, but must make measured guesses and

suppositions about time entries that sometimes do not add up.

On another point, Mr. Leinbach is correct, although it does not affect the

outcome at all (and truly works against Mr. Leinbach).  In Footnote 1 of the February 23

2007 Order, I noted that I had a list of numerous cases in the morning of July 11, 2006,

but that no one from counsel's office appeared at them.  That was incorrect.  Mr.

Leinbach's office was counsel to many parties in many cases listed to be heard in the

Reading courtroom on July 11, 2006.  Most of the hearings were resolved prior to July

11.  Mr. Leinbach erroneously notes in the Supplement that Mr. Roth appeared for two

clients in the morning hearings.  But three matters went ahead with Mr. Roth making

presentations to me.

The three presentations constituted resolutions of contested matters, but Mr.

Roth nonetheless appeared on behalf of his clients in the three matters.  Between 9:36

a.m. and 9:45 a.m., on July 11, we had a call of the list in which Mr. Roth noted his

appearance in three resolved matters, asking that I hear them on the so-called "short" list,

at which settlements, unopposed matters, and matters otherwise not requiring a hearing

are heard.  In one of those cases, <u>In re Hanson</u>, No. 05-25661, Mr. Roth appeared and

noted during the call of the list, between 9:39 a.m. and 9:40 a.m., only that a settlement

had been reached and a stipulation would be filed.  In a second case, <u>In re Asken</u>, No., 05-

16

20092, Mr. Roth appeared and presented the agreement of counsel in the case between

10:07 a.m. and 10:09 a.m.  In the third case, In re Youngkin, No. 06-20801, Mr. Roth

appeared and noted no opposition in the matter between 10:35 a.m. and 10:38 a.m.

Quite clearly, therefore, although no actual hearings were held for Mr.

Leinbach's clients, Mr. Roth appeared in three matters in the morning of July 11, 2006.

Mr. Roth was done with the hearings by 10:40 a.m.  The creditors' meetings for Debtors

in this case and for his other clients were both scheduled at another address in Reading at

3:00 p.m., later that day.  I have no idea what Mr. Roth did in the approximately four-and-

one-quarter hours from 10:40 a.m. to 3:00 p.m., other than the 15-minute drive to the

creditors' meetings location.

More to the point, if I use Mr. Leinbach's suggested arithmetic of taking the

11.9 hours and divide by five, the time to be charged in this case is only 2.38 hours.  That

figure is a bit closer than 3.0 hours to the 1.75 hours that I had calculated in the February

23 2007 Order.  Even using Mr. Leinbach's rationale and calculations, therefore, his

charge of 3.0 hours is an overcharge.  But even 2.38 hours misrepresents the time actually

spent on Debtors' creditors' meeting in this case.

Mr. Leinbach was faced with a choice on what would be fair for his

clients[26] to charge.  His associate attorney Mr. Roth was due in Reading by 9:30 a.m. on

---

[26]I suggest, perhaps gratuitously, that Mr. Leinbach gave little thought to what was fair
for his clients.  Rather, he sought to maximize his fee by charging for Mr. Roth's dead time in
Reading.

behalf of three clients and was completely finished for those clients by 10:40 a.m.  And

Mr. Roth was due in Reading at 3:00 on behalf of two other clients and should have

finished by 3:30 p.m.[27]  Mr. Leinbach's real problem is that the lion's share of his

difficulty is caused by his failure to have accurate, contemporaneous time records.  This

fundamental deficiency leads to his recurring inability to present any probative evidence

that supports his time entries for the creditors' meeting and otherwise.  I can say with

comfort that what is not fair would be charging clients for the more than four hours that

Mr. Roth was in Reading between the hearings and the meetings.

Quite simply, therefore, Mr. Leinbach's Application, his testimony in the

April 26, 2007 hearing, and the Supplement failed to prove to me that the 3.0 hours

claimed for the July 11, 2006 creditors' meeting, were actually incurred and earned.  Mr.

Leinbach carries the burden of establishing that the requested fees were actually earned.

See Younger v. Pennsylvania Resources Corp. (In re Younger), 360 B.R. 89, 97 (Bankr.

W.D. Pa. 2006), citing Zolfo Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 261

(3d Cir. 1995).

The calculations that concluded footnote 1 in my February 23 2007 Order

remain valid.  The total time attributable to the two creditors' meetings should have been

a total of three and a half hours, which would be chargeable to Debtors as one and three-

---

[27]This is admittedly an assumption based upon my experience with creditors' meetings.
In the afternoon of July 11, 2006, the Chapter 13 Trustee had scheduled ten creditors' meetings
at each of 1:30 p.m., 2:00 p.m., 2:30 p.m., and 3:00 p.m.  Eight meetings were scheduled at 3:30
p.m.  Most creditors' meetings take 5-15 minutes.

quarter hours.

I refer now to the remarkably similar circumstances in a fee application

faced by the Bankruptcy Court for the Northern District of Indiana.  In re Walker, No. 89-

11748, 1991 WL 186585 (Bankr. N.D. Ind. May 21, 1991).  In Walker, the court

substantially reduced a fee requested by counsel who had charged time for hearings that

he had not attended and had over-charged for hearings he did attend on days in which he

appeared for multiple clients.  Walker, 1991 WL 185585, at *6-9.  The Walker court's

review of that very similar issue is informative and instructive for me,[28] and much of the

nature of my review and investigations of court records was quite similar to that of the

Walker court.

## V.  The Court's Power and Duty To Review Sua Sponte Counsels' Fee Applications[29]


The 1994 decision of the Third Circuit Court of Appeals in In re Busy

Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994), described the powers and

responsibilities of a Bankruptcy Judge in reviewing counsels' fee applications.  Every

Bankruptcy Court in the Third Circuit has relied upon, and most courts have described,

the Third Circuit Court's prescription of a court's powers and requirements for reviewing

---

[28]The Walker court's procedural approach to protecting counsel's due process rights may
run contra to the Busy Beaver decision, but it is otherwise instructive.

[29]This Section V of this Memorandum Opinion is very similar to sections with the same
heading name in the previously mentioned cases of In re Wise, No. 02-20931, slip op. at 20
(April 3, 2007); and In re Heffner, No. 05-26495, slip op. at 18 (April 19, 2007).

fee applications.  I will not reiterate the background or any of the <u>Busy Beaver</u> approach

to secretarial/paralegal time, because they are not at issue in this matter.  <u>Busy Beaver</u> is

important here for two reasons.  First, it establishes not only my power, but my duty, to

review sua sponte, counsels' fee applications.  Second, it sets forth certain precepts that

courts shall follow to protect counsels' due process rights in the review of fee applications

when no other party has objected.  Again, both of these issues have been addressed and

analyzed by numerous prior courts, so I will only summarize <u>Busy Beaver's</u> guidance for

me.


<u>A.  Power and Duty of Bankruptcy Court To Review Fee Applications Sua Sponte</u>

Sections 105[30] and 330[31] of the United States Bankruptcy Code and Federal

Rule of Bankruptcy Procedure 2016[32] provide broad support for both my power and my

---

[30]Section 105(a) of the Bankruptcy Code is clear and compelling authority for my power
to review, sua sponte, a fee or expense application.  <u>Busy Beaver</u>, 19 F.3d at 841.  Section 105(a)
provides in part:

>No provision of this title providing for the raising of an issue by a party in interest
>shall be construed to preclude the court from, sua sponte, taking any action or making
>any determination necessary or appropriate to enforce or implement orders or rules, or
>to prevent an abuse of process.

11 U.S.C. § 105(a).

[31]Section 330 states that "the court may, on its own motion or on the motion of [others]
award compensation that is less than the amount of compensation that is requested."  11 U.S.C. §
330(a)(2).

[32]Rule 2017(b) expressly spells out my power to review fee applications of a debtor's
counsel on my own initiative.  <u>Busy Beaver</u>, 19 F.3d at 841.  Rule 2017(b) provides:

>On motion of [others] or on the court's own initiative, the court after notice and a
>hearing may determine whether any payment of money or transfer of property, or any
>agreement therefor, by the debtor to an attorney after entry of an order for relief in a

duty to review counsels' fee applications sua sponte without regard to whether an

objection has been advanced by some other party.  Busy Beaver, 19 F.3d at 841-45.

Going beyond saying that Bankruptcy Courts have the power to review fee applications

sua sponte, the Third Circuit found "a duty to review fee applications, notwithstanding

the absence of objections" by other parties.  Busy Beaver, 19 F.3d at 841 (emphasis in

original).


B.  Due Process Protections Upon a Court's Review of a Fee Application

        The Third Circuit did not leave the review of fee applications in a

procedural vacuum, but explained in some detail the protections, including a right to a

hearing, that must be accorded to counsel whose fee application has been rejected or

reduced.  Busy Beaver, 19 F.3d at 845-48.  Busy Beaver reviewed differing approaches to

ensuring that counsel have their due process rights protected.  First, a court may note

(presumably through some order) its specific concerns and allow counsel to supplement

the fee application in response thereto before holding a hearing and issuing an order on

the application.  Busy Beaver, 19 F.3d at 846.  Second, a court may rely on the general

standards for reconsideration of an order.  Busy Beaver, 19 F.3d at 846, quoting In re

Pettibone Corp., 74 B.R. 293, 300-01 (Bankr. N.D. Ill. 1987).

        The Third Circuit noted the mandate on courts to allow the fee applicant the

---

        case under the Code is excessive  . . . .
Fed. R. Bankr. P., Rule 2017(b).

opportunity, if a request is made to the court, to present evidence or argument that the fee

application is sufficient.  The Circuit Court went on to explain that, to make the hearing

meaningful, the court should first apprise the fee applicant of the particular questions and

objections it harbors.  Busy Beaver, 19 F.3d at 846.  The Court's statements on providing

due process were all made in the context of dealing with a good faith fee applicant, one

who reasonably attempts to comply with the statutory dictates and the federal and local

rules.  I find that Mr. Leinbach's (1.) over-charging for Mr. Roth attending the July 11,

2006 creditors' meeting when Mr. Roth had also attended a creditors' meeting on behalf

of another client in that same afternoon and (2.) advancing a fee application with the same

type of error contained in many previously rejected fee applications constitutes bad faith.

I believe, nonetheless, that Mr. Leinbach was and is entitled to the due process

protections as explained by the Third Circuit Court in Busy Beaver.


C.  Eastern District of Pennsylvania Protection of Due Process in Fee Applications

             The Third Circuit Court required, as one procedural mechanism, a court to

give notice of specific issues with the fee application first and then hold a hearing.

Alternatively, the Third Circuit required a court that denies some amount of the fee

without a hearing to notify the applicant of its particular reasons for denying the fees, and,

if counsel desires to do so, to allow counsel the occasion to defend the fee application

with argument or evidence at a hearing.  The United States Bankruptcy Court for the

Eastern District of Pennsylvania has provided precisely this latter mechanism (in the

22

context of a request for reconsideration) in its Local Rule 2016-1(f), which states:

> (f) *Disposition Without Hearing:  Reduced Award.*  If the court without holding a hearing, awards an applicant less than the requested amount of compensation and reimbursement of expenses, an applicant's motion under Rule 9023 of the F.R.B.P. to alter or amend the order may include a request for a hearing on the application or be accompanied by a brief in support of the application.  Such a motion to alter or amend is governed by LBR 9014-2, Motions Determined Without a Hearing, except that the court shall hold a hearing if an applicant requests a hearing.

L.B.R. 2016-1(f) (2005).   The Source for this local rule explains further:

> Subdivision (f).  If the court rules on a fee application without holding a hearing, an applicant may file a motion under F.R.B.P. 9023 to alter or amend the order.  This subdivision provides that if a Rule 9023 motion contains a request for a hearing, the court must hold a hearing before ruling on the Rule 9023 motion.  If the Rule 9023 motion does not contain a request for a hearing, the court may dispose of the motion under L.B.R. 9014-2 without a hearing.

Full due process protection is therefore afforded to a fee applicant whose fee is reduced despite no advance notice.  Mr. Leinbach's due process rights, as described in and required by Busy Beaver, were satisfied and protected even though I had issued the February 23 2007 Order reducing his fees with no hearing.  Mr. Leinbach clearly had the unqualified right under L.B.R. 2016-1(f) to request my reconsideration with a hearing under Rule 9023, which he did.  Mr. Leinbach, however, was not timely in filing his Reconsideration Motion, which I will discuss below.

## VI.  ADDITIONAL REDUCTIONS IN ATTORNEYS' FEE AS A SANCTION[33]

In addition to reducing his requested compensation by the amount of the fee attributable to the overcharge for the creditors' meeting that he attended on behalf of Debtors ($300), I also reduced Mr. Leinbach's fee by the amount reasonably attributable to the meeting ($420) as a sanction.[34]

Beginning in the Fall of 2006, through February 1, 2007, the date of the Faust and Wasilewski hearings (which resulted in fee reductions for overcharging time), Mr Leinbach's fee applications have continued to contain gross overcharges such as the overcharge in this case for attending the July 11, 2006 meeting, which Mr. Roth attended on behalf of two clients.  The Application was filed January 2, 2007, well after the hearings and instances of reduced fees through the Fall of 2006.  Mr. Leinbach was obviously aware of the billing errors he had made and continued to make, resulting in overcharging his clients.

## A.  The Court's Inherent Power To Sanction Attorneys

---

[33]This Section VI of this Memorandum Opinion is very similar to sections with the same heading name in the previously mentioned cases of In re Wise, No. 02-20931, slip op. at 25 (April 3, 2007); and In re Heffner, No. 05-26495, slip op. at 22 (April 19, 2007).

[34]As calculated above, three and one-half hours is properly attributable to the two creditors' meetings.  Half of that would be one and three-quarter hours, which at $240/hour, would have yielded a proper fee of $420, a reduction of $300 from the $720 actually charged. The sanction reduces the amount by an additional $420.

The Third Circuit Court of Appeals recognized the inherent power and authority of bankruptcy courts to sanction attorneys who act in bad faith when appearing before them in Leinbach v. Fein (In re Amoroso), 123 Fed Appx. 43, 47 (3d Cir. 2004).  I may not, and I would not want to, assess sanctions pursuant to my inherent power to sanction an attorney unless that attorney acted in bad faith.  Leinbach v. Fein, 123 Fed. Appx. at 47.  Mr. Leinbach is responsible for allowing faulty and incorrect fee applications to be prepared by his staff and for allowing recently and formerly prepared, faulty, and incorrect fee applications to continue through the approval system.  In the face of his certain knowledge that his time-keeping methodology is grossly deficient and faulty, Mr. Leinbach's persistence in advancing and pressing erroneous fee applications constitutes bad faith.

Recently, Mr. Leinbach withdrew some of his pending fee applications.[35] Although he provided no express reason for his withdrawals of those fee applications, I would hope that he understands that he should withdraw and re-review every pending fee application that relies on his error-prone methodology for the re-creation of time entries. My prior orders in other cases, in which I reduced the amount of his fees only by reducing the amount for offending entries, have apparently not led him to put more care into his fee applications or to review those already filed.  Perhaps the sanction in this case (and other

---

[35]See, e.g., In re Colon, 01-22199; In re Asken, 05-20092; In re Honey, 05-23597.

25

recent cases[36]), as small as it is, will cause him to do so.  On the other hand, perhaps

further, more severe, sanctions will be necessary.

B.  Particularized Notice of Sanctions and Opportunity To Respond

The sanction in the February 23 2007 Order was imposed with sufficient

particularized notice.  As explained in Leinbach v. Fein, 123 Fed. Appx. at 49, I must

provide particularized notice and some opportunity to respond to afford Mr. Leinbach due

process.

First, as in Leinbach v. Fein, Mr. Leinbach has been clearly alerted about

the issue for which he is being sanctioned, i.e., problems with his time-keeping for his fee

applications beginning in Fall 2006, yet he continues to engage in the same practice of

overcharging.  Mr. Leinbach must know that my questioning and finding errors in one

after another of his fee applications must mean that he has a duty to review all of his fee

applications more carefully to avoid continual overcharging.

Second, Mr. Leinbach's due process rights were fully protected by L.B.R.

2016-1(f).  Mr. Leinbach requested reconsideration of the February 23 2007 Order,

including the sanction aspect of the Order.  He was allowed a full and complete

opportunity to present further evidence or argument on whatever issue he wanted to

address.  As I mentioned above, he came to the hearing without relevant evidence in hand

and requested leave to present it after the hearing was otherwise closed.  I granted the

---

[36]See In re Wise, No. 02-20931, slip op. (April 3, 2007); and In re Heffner, No. 05-
26495, slip op. (April 19, 2007).

request, and he filed the Supplement.  Mr. Leinbach's due process rights were fully

protected by both particularized prior notice and the opportunity to seek reconsideration.


## VII.  THE FEE APPLICATION, AS A WHOLE, CHARGED TOO MUCH FOR WHAT WAS DONE FOR DEBTORS


Beyond the particularized issue about the amount of the charge for the

creditors' meeting, my review of many fee applications and what is done for certain fees

leads me to conclude that the request for $2,395 in attorneys' fees is too much for the

tasks performed for Debtors in this case.  This was the simplest of cases  – file the papers,

appear at the creditors' meeting, and try to convince the Chapter 13 Trustee and the Court

to accept the Chapter 13 Plan as once amended.  Debtors's case was dismissed, which

often happens, but in this case, no skirmishes erupted that might required substantial

effort by counsel.  Therefore, without the issue of the specific overcharge for the

creditors' meeting, I believe that the fee in this case should be awarded, but reduced by

$720.  The fee of $1,675 constitutes a fair and appropriate charge for a case in this

posture.

## VIII.  LATE FILING OF THE RECONSIDERATION MOTION

As described above[37], Local Rule 2016-1(f) is clear in establishing the
ability of counsel to seek reconsideration of a reduction or denial of a fee application.
Local Rule 2016(f) describes the procedure for counsel to contest an adverse decision on
a fee application by filing a motion for reconsideration pursuant to Federal Rule of
Bankruptcy Procedure 9023.  Bankruptcy Rule 9023 incorporates Federal Rule of Civil
Procedure 59, which includes in pertinent part:

> (b)  Time for Motion.  Any motion for a new trial shall be filed no later than
> 10 days after entry of the judgment.
>    *    *    *
> (e) Motion To Alter or Amend Judgment.  Any motion to alter or amend a
> judgment shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. Proc., Rule 59 (b) and (e).

The Order for which Mr. Leinbach sought reconsideration was dated and
entered February 23, 2007.  Mr. Leinbach filed his Reconsideration Motion on March 23,
2007, beyond the 10-day deadline of Federal Rule 59, as incorporated into Bankruptcy
Rule 9023, as incorporated into Local Rule 2016(f).  In addition to being denied on the
merits, as discussed above, the Reconsideration Motion falls because it was filed late.

---

[37]See pages 22-23, above.

# X.  CONCLUSION

Mr. Leinbach has a history of imposing on the Court, his clients, and their bankrupt estates fee applications that over-charge for work performed and that charge for work not performed.  His protests that his fee applications are as good as possible falls short of the mark because he has been utterly unsuccessful in appropriately monitoring the accuracy of his applications.  Mr. Leinbach's clear overcharge for Mr. Roth's attendance at the July 11, 2006 creditors' meeting warrants reduction of his fee application for the excess amount charged for that event ($300).

The sanction imposed on Mr. Leinbach of a further reduction of his fees for attending the creditors' meeting ($420) is justified and appropriate.  Mr. Leinbach's due process rights were wholly protected by L.B.R. Rule 2016-1(f), which allowed Mr. Leinbach to request reconsideration of any aspect of the February 23 2007 Order for further hearing or argument, which he did.  He filed his Reconsideration Motion and was granted a hearing.  He requested and was granted leave to supplement the record.  Moreover, Mr. Leinbach clearly had prior particularized notice that his fee applications generally and this Application in particular, were faulty.

Even without the overcharge for attending the creditors' meeting, the overall attorneys' fee in this case should not exceed $1,675, which is the fair and appropriate fee in this case.  Finally, the Reconsideration Motion must also fall and be denied because it was filed beyond the ten-day filing deadline under Local Rule 2016(f),

Bankruptcy Rule 9023, and Federal Rule 59.

This Memorandum Opinion supports the following Order.

**Date: May 15, 2007**

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  DAVID A. BECHTOLD and           :
         MELISSA JO JOHNSON,             :         Case No. 06-20586REF
                    Debtors              :         Chapter 13

ORDER

AND NOW, this 15th day of May, 2007, upon the discussion in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Reconsideration Motion is DENIED.

IT IS FURTHER ORDERED, as discussed and calculated in the Memorandum Opinion of this date, that the Application of counsel in this case is hereby granted in part and reduced in part.

IT IS FURTHER ORDERED that counsel may be paid a fee of $1,675 in attorney's fees and $484 in reimbursement of expenses for a total amount approved of $2,159, $1,500 of which has already been paid to counsel through a retainer, leaving an unpaid attorneys' fee of $659.

BY THE COURT

_____
RICHARD E. FEHLING
United States Bankruptcy Judge

31